We are in Philadelphia in a particular Temple Law School. Being a national court, once a year we sit outside of Washington. And this year we decided to sit in Philadelphia and Wilmington. And we are sitting in several law schools in the District Court of Philadelphia and in Wilmington. So we are very pleased to be here. Our first case is AMS ASSOCIATES v. United States and the Laminated Woven Sachs Committee, 2013-12-08. And first we will hear from Mr. Denning. Good afternoon. May it please the Court. The trial court's judgment below is based on a false predicate. The court's ruling that the Department of Commerce retroactively suspended liquidation of entries is predicated on a finding that the Department of Commerce expanded the scope of the underlying order when issuing a substantial transformation determination in the first administrative review of the Laminated Woven Sachs order. Could I ask you to step back a moment? I found the briefs rather difficult to follow. If I understand correctly, there was a suspension of liquidation with respect to certain described sachs back in 2008, correct? That's correct. Did that suspension of liquidation cover these items? That's correct. Under the statute of commerce's practice is to issue a single order suspending liquidation of goods covered by an ongoing investigation at the time of the preliminary determination in an investigation, whether it's an anti-dumping investigation or a countervailing duty investigation. Those suspension instructions go to customs and instruct customs to suspend liquidation of all goods covered by the order, I'm sorry, all goods covered by the ongoing investigation. So that included sachs where the material came from outside China? That is the Department of Commerce's position during the first administrative review, this appeal which concerns the second administrative review, its briefs below and the committee's position. In short, the Department of Commerce's position, and it's correct, is that the department did not expand the scope of the order when in the first review it considered whether use of fabric produced outside of China when producing Laminated Woven Sachs inside China led to a country of origin for the output product, Laminated Woven Sachs, other than China. So is what you're arguing about, in addition to the scope of the original anti-dumping order, the scope of the original liquidation instructions? Is that really what the dispute is here? That has not been, that should not be the argument. That is the position that the Court of International Trade took below because the Court of International Trade decided that when Commerce issued the clarification instructions, the July 23, 2010 clarification instructions, that Commerce expanded the order? Well, but your position is they didn't. They did not expand the order. So you are fighting about the original scope of the original order and the scope of the liquidation instructions that were issued pursuant to that order, no? The dispute over scope, which was specifically a country of origin question, was first raised in the First Administrative Review and carried forward into the Second Administrative Review, which is on appeal here. In the substantial transformation determination that Commerce reached in the First Review, it decided that there was no change in the country of origin based on use of foreign material. Yeah, but help me, because I'm really trying to understand this, okay? There was suspension of liquidation originally, and you disagree as to whether that applied to Sachs, where the material came from outside China. Am I being correct about that? I'm unsure of your statement, so please let me use my terms. The original suspension instructions applied to all laminated woven sacks produced in China, regardless of the origin of any of the raw materials used in China producing the sacks. Well, that's your view of it, but is that the other side's view of it? During the administrative phase and at the trial court level, Shapiro never specifically argued that there was an expansion of the order. Shapiro's argument has always only been that Commerce is not authorized to consider country of origin issues in an ongoing administrative review, and that instead Commerce is required to take that analysis out of the ongoing administrative review and initiate a separate scope proceeding and decide the issue inside the scope proceeding. Shapiro has never specifically argued that Commerce expanded the scope of the order during the first administrative review when it made the scope ruling, the country of origin ruling. Now, I can speculate as to why... But aren't you both arguing about what the scope of the original anti-dumping order was? I mean, they're saying, and they for a time got customs to agree, that it didn't cover sacks with material originating outside of China. And your view is that the order has always covered that. Shapiro raised that issue in the first administrative review. The department resolved it with a substantial transformation determination, and Shapiro has never challenged the substantial transformation determination. And in the brief below, specifically stated that the substantial transformation determination was correct on the law and the facts. Now, the substantial transformation determination is where Commerce decided the origin of the fabric is irrelevant to the country of origin of the goods coming out of China. Right. So the real question is, can you go back, right? Can you go back and recapture that period of time before the transformation determination? That is the way the Court of International Trade framed the question, but that's not the correct way to frame the question. If the Department of Commerce decides that goods are covered by an order, then they were always covered by the order. They were always covered by the original suspension agreement. Whenever Commerce makes the scope determination, there are only two outcomes. Either the goods are not covered, never were covered, and cannot be covered by the suspension of liquidation, or the goods always were covered. And if they always were covered, they were covered at the time the order was issued. In this case, it's January 2008. And the suspension of liquidation instructions apply to those goods. Okay. If they were always covered from the very first anti-dumping order, and it was that clear that they were always covered, couldn't Congress simply have recaptured any duties that were owed under the penalty provisions of 1592? I mean, a mere negligent misdesignation of origin underneath the anti-dumping order would have been enough for them to not only recapture the duties, but possibly even recapture some penalties. Frankly, the committee has always been troubled with the fact that we are before this court right now because Shapiro, the importer of record, declared to the U.S. Customs that laminated woven sacks produced in China with imported fabric were not subject to merchandise, were type 1 entries, and thus every one of those entries was not suspended. Right. So it's your view that they actually would have committed fraud. Absolutely. Or misrepresentation. So there should be, why wouldn't there be a provision available to Commerce not only to recapture those duties, but to penalize them substantially for that even gross negligence? Under the applicable law from Commerce's perspective, you are asking a Customs question. From Commerce's perspective, the outcome of its administrative reviews, the assessment of any applicable duties, occurs only if the entries have not been liquidated. Because Shapiro claimed the entries at question, and there's a considerable volume of entries here, and that's laid out in, it's a business proprietary number, it's in footnote 2 of our opening brief, all of those entries were liquidated. And so it's not possible for a Commerce action to cause assessment. Once the entries are liquidated, they cannot be re-liquidated pursuant to Commerce's duties, and the only way to capture those entries is a 592 proceeding. We are here dealing with the Commerce phase of this. The committee has had conversations with U.S. Customs. Candidly, the committee can have very, very little impact on this role. We don't have access to Customs data on which entries have been liquidated. The process, we can go to Customs and say, this is going on, please investigate it. If Commerce goes forward with an investigation, we never know about it. So we can do the things that we can do to try to get Customs interested in something like the 592 action, but we are very, very limited there. What is the reason that the entries we're dealing with here have not been liquidated? Aside from the statement in 2010, the July 23rd statement. There are, the totality of entries made during the first and second review, of all entries at issue, only some of them have not been liquidated. But I'm asking why they haven't been. And the reason for that is because Commerce's clarification, the clarification that's at issue here worked. The committee discovered... These entries all came after the clarification in 2010? Those entries, all entries came before the clarification. The entries at issue were during the first administrative review, which was... Well, how come they weren't liquidated then? Because the liquidation process takes time. So an entry comes in... It's just fortuitous that you're saying that. It is frankly fortuitous. When the Department of Commerce issued, on July 23, 2010, when the Department of Commerce issued these instructions to Customs to ensure that any liquidated entry, rather, to ensure that no entry of sacks from China is unliquidated, that liquidation is suspended, is not suspended, sorry, because of the origin of the fabric, Customs at that point looked, apparently, again, we do not have good information on this because we don't have access to it. Because some of the entries were not liquidated, it appears that what occurred is that Customs contacted Shapiro and said an issue has been raised with respect to these entries. We know this because of the clarification that Commerce issued. We're stopping liquidation. That is the only reason that some of the entries are not liquidated. If we allow this to happen, I mean, as the CIT pointed out, wouldn't that put us in a situation where Commerce could always say, oh yeah, that was always within the scope of the order. So they would never have to go through a scope inquiry under the regulations. They could simply say... That's definitely not a concern here. And the reason it's not a concern is, again, in a scope proceeding, the Department only makes one of two decisions. The goods in question are not covered, or the goods are covered, and if the determination is that the goods are covered, then they always were covered. All entries of goods subject to an order are covered upon entry. And a later scope ruling by the Department of Commerce saying that these goods are indeed covered by the order means that they always were covered by the order. So there's never a circumstance in a scope proceeding in which Commerce does not expand the order and Commerce is strictly prohibited from expanding the scope of an order during a scope proceeding. So why didn't they just initiate a scope proceeding? This issue arose in an administrative review. Under the statute, the Department is required to calculate margins on each entry of subject merchandise entered during the period of the review. Commerce is required under statute to do that. Commerce has 545 days to complete an administrative review. It needs to gather the data required for the margin calculations. In short, it simply doesn't have time to stop the proceeding, separately initiate a scope proceeding, figure out the scope issue, and then bring that resolution back into the ongoing administrative proceeding because the administrative review has a statutory timetable. Instead, what Commerce does, and Commerce routinely does this, it decides the scope issue inside the ongoing administrative proceeding. And what Commerce is asking is simply, are these goods subject merchandise upon which we must calculate margins under the statute during this administrative proceeding? That's the issue that Commerce was faced with here. The committee discovered that many of Shapiro's entries were being declared to be non-subject merchandise. We knew they were subject merchandise. We needed the Department of Commerce to collect information on those goods. Mr. Denning, you wanted to save a little time for rebuttal. Do you want to continue? I would prefer to save some time for rebuttal, so I'm sorry if I haven't answered your question. Do you want to continue for rebuttal? No, that's fine. Mr. Whistler. May it please the Court. My name is Ron Whistler. I'm a law firm of Kutek Rock and I'm representing AMS Associates. Suppose the original anti-dumping order and liquidation instructions had said these sacks are subject to anti-dumping duty regardless of where the fabric originally came from. Suppose it had been absolutely clear on its face. Where would we be here now? Certainly, even if there had been a mistake and some of the items had been liquidated despite the liquidation instructions, the remaining things that weren't liquidated could be liquidated at the anti-dumping duty specified in the order and there wouldn't be any obligation for Commerce to go forward with a scope proceeding. If the scope was clear and did include sacks regardless of origin, which is how they clarified it two years later, there wouldn't have been an issue. So the question is whether it was clear in the first place or not. Of course not. You say that, but that's what you're arguing. You have to look at the language. If I disagree with you and say it was clear in the first place, you lose, right? Well, correct, but just look at the language that was used in the petition. You look at the language that was used in the order, the spoke language of the order. It does not mention regardless of the country of origin. But it's all based on how the bags were fabricated. It had nothing to do with where the material came from. It was based on fabrication, which all occurred in China. This is a textile product. Textile products are different from all other manufactured products. There are special textile rules by customs. And one of the rules, which we cite in our brief, is that a textile fabric, the country of origin, is decided by the country in which the fabric is woven, not by which it's manufactured or incorporated. The country in which the fabric is woven. And that is a customs rule. Based on that customs rule, Shapiro avoided being subject to the anti-dumping duty by incorporating Vietnamese origin sacks in his... He did both. He had some sacks during the period of review, like in the early part of the review, were made from Chinese fabric. Those entered under the order and are subject to the order. Then, subsequently, he incorporated... He manufactured sacks in China using Vietnamese fabric. And those were properly reported as laminated woven sacks exported from China, but with the country of origin of Vietnam. And those sacks are not subject to the anti-dumping order. The original one. The original one. But if we disagree with you, you lose. Yes, we do. But what am I to make out of the provisions of 351.225 of the regulations that contemplate that where there is a request for a scope ruling, sometimes the entries in question will have been unliquidated because the liquidation was suspended. And as to those, the scope ruling applies retroactively. Well, under the scope rules, the key provision is 225.L2. Now, contrary to what Mr. Denning was saying, you can have the case in which something is found not subject to the order and is not covered by the order because it explicitly states that regulation. It says it has two provisions. One, if the merchandise is covered, then the suspension of liquidation, which it was operating under, continues. And then part two is, if the merchandise was not entering under the suspension of liquidation, then we will issue a suspension of liquidation going back to the date of the initiation of the scope inquiry. But the point is that not every scope ruling involves perspective-only application of the suspension of liquidation. It contemplates that there will be situations in which liquidation was already suspended and then the scope ruling is retroactively applied to those as to which liquidation was already suspended. Correct? If the suspension of liquidation already applied, then it was subject to the order. If the merchandise was not covered by the order, then it can bring it into the order, which is the purpose of the scope ruling, when it's brought particularly by a petitioner because he wants things that are not covered to be covered. And in those cases, when something is not covered, but commerce determines in a scope inquiry, which can be a scope inquiry, which can be anti-circumvention, which could be a country of origin, which could be a substantial transformation test. When commerce determines that, that this product is under the order, then it is brought under the order, but on a prospective basis. It only can go back to the date of the initiation of the scope inquiry. So people have noticed. I don't understand that because the regulation says specifically that if they were subject to a suspension of liquidation, then the scope ruling applies retroactively to those items that were suspended. It doesn't apply retroactively. It was covered, so it always did apply. I mean, if it's covered, then it was subject-merchandised. Well, that's the question here, then, as to whether this was always covered by the anti-dumping order and the suspension of liquidation. Well, yes, but it's clear that it wasn't. Wait, wait, wait. Or not, right? But it's clear that it wasn't. So, first of all, let me put the CBP thing off the table. You rely on that, but that predates the anti-dumping order, and it discusses different factual scenarios, correct? Yes, but I want to say, what's important is the customs rule that the country of origin of a textile product is the country in which the textile fabric is woven. Shapiro did not put that down. Shapiro put down that his Vietnamese origin sacks, the Vietnamese origin fabric, if he put down that was a Chinese product, he would be subject to customs fraud because customs collects this information that this is a Vietnamese product under the fiber agreement. The anti-dumping order didn't say we are prohibiting you from bringing in textiles. It said particular woven sacks made in a particular way, correct? It said laminated woven sacks from China. That's the name of the order. Well, that's the name of the order, but it has a lot more detail in it, correct? It talks about how they were manufactured, correct? Not specifically. Look at the order. Just look at the scope of the order. Under your theory, say someone would come in and the order would be fairly clear, and we all know what it meant to encompass. Couldn't someone in your position then simply say, oh, you know what, I'm sure it didn't mean to encompass this, and therefore, until you initiate a scope inquiry to tell me that A means A, I don't have to pay for any of that. I can just say it doesn't cover it. Customs is the agency that enforces the law. If customs makes the first decision, is it in or out? Suppose there was no customs ruling here. Where would we be? To be honest, if there was no customs ruling, if it was not a textile fabric, I wouldn't be here. Mr. Shapiro would have done something else to get his product. He is a distributor of laminated woven sacks. He cannot purchase from the petitioners to sell his sacks because he is in competition with the petitioners. He can only get his, he doesn't make sacks in the United States. Okay, so if we had no customs ruling, and he'd entered these things and did not say at the time of entry that they were subject to the anti-dumping order, you agree that he would be liable for the duty with respect to unliquidated items? Yes, he would, and he'd also be in bigger trouble. He'd be subject to custom fraud, which is criminal. So you're agreeing with the questions I was asking before of your friend here on the other side, and that is that, in fact, the only remedy that customs would have in the scenario that I laid out, if someone sort of just blatantly says, I'm ignoring what the scope of the order is, would be under 592. No, I don't follow that. I mean, they'd still be liable for customs duty on unliquidated items. Right, if customs says they're in, then they're in. I mean, that's just how it happens. And if the petitioner doesn't like it, he can bring a scope ruling. If we don't like it, we can bring a scope ruling, if we think it's not subject to the order. That's how it goes. That's why they have scope rulings. So what I'm not understanding is, what's the significance of the customs ruling interpreting the order? My understanding is customs doesn't have the authority to interpret commerce and anti-dumping orders. Commerce has the authority to determine the country of origin for anti-dumping and countervailing duty purposes. But nobody disagrees with that. However, commerce does not have the authority to change the customs rule of origin for customs purposes. This stuff still comes in as a subject of Vietnam. Now, the proof of the pudding is, after the DOC issues its preliminary determination, which we totally disagree with, and before the final determination, they came out with a list of third country designation in order to implement capturing the laminated woven sex coming in from the other countries. Because they recognize these importers have to report the country of origin where it was woven. They have to say this stuff is the country of origin of Vietnam, of India, of Pakistan, of Kazakhstan, of all these countries. So commerce issued designations for all these countries and then instructed customs, if it comes under these designations, then it's subject to the order. Which would be the way you normally would do it, but it was totally ultra-virus. But I'm not sure that you've answered the question, why do we care what customs thought? Wait, wait, wait, you're supposed to let me finish. Why do we care what customs thought as to the scope of the commerce anti-dumping order? Customs never says what it thinks of commerce's anti-dumping order. Customs has its own rules of origin, which will apply even in an anti-dumping context until commerce comes up with its own ruling. How is anybody supposed to know how commerce is going to interpret something before it makes a decision? So once commerce makes a decision that this stuff is, we're going to not apply the customs rule of origin for purpose of the anti-dumping law, that is fine. And if it's done according to the regulations, everybody will have noticed that this is what's going to be done. And everybody will know from the date that the scope inquiry was filed that they would be liable for anti-dumping duties if they imported this in the future. Shapiro is an American citizen, he has an American company, he has assets in the United States, he has a home in the United States, he is not going to risk his business and his life to have fraudulent entries. So he is going to follow the law, and he did follow the law. And the Court of International Trade properly said... He didn't follow the law if we conclude that the original anti-dumping order covered these goods. If you find that, that is fine. But the court below did not find that, and the court below said that commerce and the petitioner did not use the tools available to them to seek a remedy for a perceived circumvention. The regulations are so clear. If I was going to give a law school test about anti-dumping, I could give a test, say everything that commerce did wrong in that determination, that scope, the thing that it did outside the scope of its regulations. It didn't follow its regulations. A lot of students here. It is the perfect test. You can go on and on. Whether the answer is right or wrong on the test is going to depend on what we rule. How to initiate. If there is an ongoing scope inquiry, you can put it into context of the administrative review. If there is a countervailing duty case that is with it, you have to do things. You have to give notice to all the parties, not just the parties in the dumping case. You have to give notice to all parties that ever participated in that case because this is a scope ruling. There are 15. It goes up to 0. 225 goes up to 0. There are 15 rules you have to follow. Commerce did not follow any of them. You look at the statute. It is contrary to the statute. The statutory scheme is always prospective application of the remedy. People have noticed. In order for us to find in your favor, we have to conclude that the original dumping order incorporates into it or reads into it the textile regulations that you refer to. You have to read into it that people who are entering merchandise into the United States and entering stuff through customs have to follow customs regulations. Even if commerce comes out and says this stuff is subject to the order, they still have to say this stuff is from Vietnam and then commerce issues a third country designation where it goes under and then customs can follow that third country designation and then put it subject to the order. Before commerce does that, you have to follow customs rules. Thank you, Mr. Whistler. Mr. Denning has a couple of minutes rebuttal time. Thank you. Customs country of origin rulings could be no less relevant. The issue before this court is enforcement of the anti-dumping laws. The court has repeatedly said Shapiro has admitted that when it comes to determining what is subject merchandise and application of the anti-dumping laws, customs country of origin rulings are irrelevant. The issue for entry of merchandise that is subject to an order isn't what's the customs country of origin, it's what's the type of merchandise. Is it type one, an ordinary entry, or is it type three, an entry that is subject to anti-dumping or countervailing duties. The customs country of origin issue is a separate question that is crucial for that agency, but we're talking about application of the anti-dumping law and the countervailing duty law, not customs law. The court has declared its entries to be type three based solely upon a customs country of origin ruling that Shapiro has admitted in this case has no application to the Department of Commerce. The issue here is were these goods subject merchandise at the time they came into the United States, and they were. Shapiro has not... In order to be subject merchandise, didn't it have to originate in China? Yes. There are two criteria for identifying subject merchandise. The country at issue and the definitional characteristics of the goods. The substantial transformation determination that the Department of Commerce made, the country of origin determination that the Department of Commerce made, concerns the country of origin question. Commerce decided that the origin of the fabric makes no difference, and incidentally Shapiro said... You didn't actually say that until the administrative review. Correct? The substantial transformation determination that the Department made on May 25, 2010 in the middle of the first administrative review concluded that the country of origin of the raw material is irrelevant to application of the order. Right, but those words were not in the 2008, the August 7, 2008 order. That's correct, and in fact you could survey every order and you will never find a definition based on the origin of a raw material input. Shapiro is arguing that this is confusing. We don't know whether or not it's covered by the order because of the origin of one of the raw material inputs. The Department of Commerce does not define orders based on the origin of a raw material input. That has not ever occurred. There is no precedent for that. There are hundreds of raw material inputs. Some have hundreds of raw material inputs. That doesn't determine coverage. Thank you, Mr. Jennings.